UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY C. RIDOSH,

                                      Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                                        Defendants.
_____

<u>DECISION AND ORDER</u>

16-CV-6466L

## PRELIMINARY STATEMENT

Plaintiff Anthony C. Ridosh ("Ridosh") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for child's insurance benefits and Supplemental Security Income ("SSI"). (Dkt. #1).

On January 31, 2013, Ridosh filed an application for child's insurance benefits, and for SSI on February 27, 2013, alleging disability beginning on October 15, 1991,[1] due to seizure disorder, speech disorder, learning disability, attention deficit disorder, flat feet, and bad vision. (Tr. 74-99, 197).[2] On June 11, 2013, the Social Security Administration denied Ridosh's application, finding that he was not disabled. (Tr. 100-110). Ridosh requested and was granted a hearing before

---

[1] The ALJ uses this alleged onset date throughout his decision. However, Ridosh's motion papers state that the alleged onset date is October 15, 2001, (Dkt. #11-1 at 2), and October 29, 1991, (*id.* at 4), and elsewhere in the administrative record, Ridosh's alleged onset date is listed as October 29, 1990, (Dkt. #8 at 75, 87, 98, 99, 191), and October 15, 1991, (*id.* at 197).

[2] References to page numbers in the Administrative Transcript (Dkt. #8) utilize the internal Bates-stamped pagination assigned by the parties.

Administrative Law Judge John P. Costello (the "ALJ"). (Tr. 112-115, 121-125, 172-175). The ALJ conducted the hearing on September 29, 2014, at which Ridosh and vocational expert Carol G. McManus (the "VE") appeared and testified. (Tr. 35-65). In a decision dated January 28, 2015, the ALJ found that Ridosh was not disabled and not entitled to benefits. (Tr. 17-34). On May 9, 2016, the Appeals Council denied Ridosh's request for a review of the ALJ's decision, making the Commissioner's decision final. (Tr. 1-4). Ridosh commenced this action on July 7, 2016, seeking review of the Commissioner's decision. (Dkt. #1).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ##11; 13). For the reasons set forth below, Ridosh's motion (Dkt. #11) is denied, and the Commissioner's cross motion (Dkt. #13) is granted. Ridosh's Complaint (Dkt. #1), therefore, is dismissed with prejudice.

## DISCUSSION

**I.     Relevant Standards**

Determination of whether a claimant is disabled within the meaning of the Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 C.F.R. §§ 404.1520, 416.920. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In determining whether the ALJ's decision rests on substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). Still, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled[.]" *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The same level of deference is not owed to the Commissioner's conclusions of law. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court first examines the legal standards applied, and then, if the standards were correctly applied, considers the substantiality of the evidence. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

## II. The ALJ's Decision

In this case, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Ridosh had not engaged in substantial gainful activity since October 15, 1991—the alleged onset date. (Tr. 19). At step two, the ALJ found that Ridosh had the following severe impairments: learning disorder, attention deficit hyperactivity disorder ("ADHD"), depression disorder, anxiety disorder, flat feet (tibial tendon dysfunction), and obesity. (*Id.*). At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal a listed impairment in

Appendix 1 to Subpart P of Part 404 of the relevant regulations. (Tr. 20). Specifically, in applying the "special technique" for assessing nonexertional limitations, 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3), the ALJ found that Ridosh had "mild" restrictions in activities of daily living, "moderate" difficulties in social functioning, "moderate" difficulties with regard to concentration, persistence or pace, and experienced no episodes of decompensation. (Tr. 21-22).

Next, the ALJ determined that Ridosh retained the RFC to perform sedentary work, except that he was limited to perform simple, routine tasks, and engage in occasional interaction with coworkers and the general public. (Tr. 23). At step four, the ALJ found that Ridosh did not have any past relevant work. (Tr. 28).[3] At step five, the ALJ relied on the testimony of the VE and found that, based on Ridosh's age, education, work experience, and RFC, Ridosh could perform other jobs that exist in significant numbers in the national economy, including addressor (DOT # 209.587-010) and table worker (DOT # 739.687-182). (Tr. 29-30). Accordingly, the ALJ found that Ridosh was not disabled under the Act. (Tr. 30).

### III. Analysis

Ridosh contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Dkt. #11 at 1). First, Ridosh maintains that the ALJ's RFC determination failed to account for his stress-related limitations. (Dkt. #11-1 at 13-16). Next, Ridosh argues that the ALJ improperly weighed the medical opinion evidence of record because he relied more heavily on the opinion of L. Blackwell, Ph.D., a non-examining,

---

[3] The majority of the record suggests that Ridosh has never been employed. For instance, in his Work History Report, Ridosh indicated that he "never had a job" (Tr. 260), and he testified before the ALJ that he never had and has never applied for a job, (Tr. 43). However, as the ALJ pointed out in his decision, some of Ridosh's medical notes reflect work activity. Dr. Kevin Hopson, DPM, wrote on October 14, 2013, that Ridosh "walks to work[.]" (Tr. 409). Dr. Karen Nickell, M.D., noted in January 2012 that Ridosh's "right lateral ankle hurts if he is on his feet, for instance at work, for 3-4 h[ours] at a time." (Tr. 344). Dr. Nickell also noted in February 2012, that "if [Ridosh] is at work, which is a place where auctions occur at times, [his right lateral ankle] hurt[s] him[.]" (Tr. 346). Still, the ALJ found that Ridosh did not engage in substantial gainful activity since the alleged onset date and did not have prior relevant work experience.

4

non-treating, state-agency psychological consultant, over the opinions of Karen Nickell, M.D., Ridosh's primary care physician, and consultative examining psychologist, Yu-Ying Lin, Ph.D. (*Id.* at 16-22). Finally, Ridosh contends that Dr. Blackwell's consultative report was impermissibly vague because he did not complete a function by function analysis of Ridosh's mental capabilities in a work setting. (*Id.* at 22-25).

1. **The ALJ's Assessment of Ridosh's Stress Limitations**

Ridosh argues that remand is required because the ALJ failed to properly evaluate his stress-related limitations and the impact those specific limitations may have on his ability to meet the basic mental demands of a work setting. (Dkt. #11-1 at 13-16).

Social Security Ruling ("SSR") 85-15 "emphasizes the need to carefully evaluate a claimant's ability to deal with stress in the workplace." *Sheffield v. Astrue*, 2012 WL 5966610, *2 (N.D.N.Y. 2012) (citing SSR 85-15, 1985 WL 56857, *5-6 (1985)). "[W]hen determining whether mentally impaired individuals will be able to adapt to the stress-related demands of the workplace, the ALJ is required to make a thorough, individualized RFC evaluation, focusing on the individual's ability 'to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" *Reyes v. Colvin*, 2016 WL 56267, *5 (W.D.N.Y. 2016) (quoting SSR 85-15, 1985 WL 56857 at *4). The Court concludes that, even though the ALJ did not explicitly mention stress in his RFC determination, he nonetheless complied with this requirement.

In formulating the nonexertional aspect of the RFC, the ALJ relied upon his review of Dr. Nickell's treatment notes, Ridosh's testimony before the ALJ, and the opinions of Drs. Lin and Blackwell. Notably, out of all of this information, only Dr. Lin's psychiatric evaluation explicitly mentioned stress-based limitations, specifically opining that Ridosh was "markedly limited in

5

appropriately dealing with stress." (Tr. 360). Dr. Lin noted elsewhere in his evaluation that Ridosh reported depressive symptoms, including social withdrawal, situational anxiety-related symptoms since childhood, and that his anxiety and stress "mostly related to his relationship with his brother." (Tr. 358).

Despite this stress-based limitation, Dr. Lin opined that Ridosh had no limitations following and understanding simple directions, instructions, and performing simple tasks independently. (Tr. 360). He further opined that Ridosh was moderately limited in maintaining attention, concentration, a regular schedule, and in learning new tasks. (*Id.*). Finally, he opined that Ridosh was moderately to markedly limited in performing complex tasks with supervision, making adequate decisions, and relating adequately with others. (*Id.*). These results, in Dr. Lin's view, "appear[ed] to be consistent with psychiatric problems, and . . . may significantly interfere with [Ridosh's] ability to function on a daily basis." (*Id.*).

Dr. Blackwell, based on his review of the records available to him, which included Dr. Lin's psychiatric evaluation, similarly opined that Ridosh could understand, remember, and carry out very short and simple instructions. (Tr. 82). He also believed that Ridosh was moderately limited in his ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday or workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and to respond appropriately to changes in the work setting. (Tr. 82-83). Ultimately, Dr. Blackwell opined that Ridosh did "not appear to have more than mild to moderate work-related limitations," and that Ridosh should be limited to unskilled work because of his impairments. (Tr. 80, 84).

6

In formulating the RFC, the ALJ did not overlook Dr. Lin's opinion relating to stress, but rather chose to discount that portion of the opinion because the record evidence, as a whole, reflected that Ridosh's psychiatric limitations were not as severe as Dr. Lin's opinion suggested. (Tr. 27). Yet he still credited Dr. Lin's opinion regarding Ridosh's social withdrawal by "limiting [Ridosh] to occasional interaction with his co-workers and the public," (Tr. 28), and further limiting Ridosh to simple, routine tasks, consistent with both Dr. Lin's and Dr. Blackwell's opinions, (Tr. 23).

Under these circumstances, then, the Court is satisfied that the ALJ's RFC determination adequately accounted for Ridosh's mental limitations, including any limitation in appropriately dealing with stress. *See, e.g.*, *Cosme v. Colvin*, 2016 WL 4154280, *13 (W.D.N.Y. 2016) (finding that the ALJ's RFC finding "adequately accounted for [claimant's] limitations, including any limitations dealing with stress"; "[t]he ALJ's finding explicitly required positions involving unskilled work that did not require any contact with coworkers or the public and only limited contact with supervisors. This conclusion is consistent with both [medical opinions] that [claimant] had significant difficulties interacting with others, but was otherwise able to perform simple work independently"); *Reyes*, 2016 WL 56267 at *6 ("[i]n the court's view, although the ALJ did not specifically include stress limitations in his RFC assessment, his reliance on the findings and observations of the consultative medical sources in terms of their consideration of plaintiff's stress-related functional limitations, as well as his comprehensive consideration of the hearing testimony, objective medical evidence, and treating and consultative medical source opinions, represents the kind of thorough, individualized mental RFC evaluation contemplated by SSR 85-15 and the overall requirements of the Social Security regulations and rulings"); *Steffens v. Colvin*, 2015 WL 9217058, *4 (W.D.N.Y. 2015) ("In this case, the RFC finding requiring low

contact with coworkers and the public adequately accounted for plaintiff's stress"; "[i]n addition to the medical opinions, this finding was supported by other substantial evidence in the record, which, notably, contained no documentation of mental health treatment").

## 2. The ALJ's Weighing of the Medical Evidence

I turn next to Ridosh's contention that the ALJ improperly weighed the medical opinions of Drs. Nickell, Lin and Blackwell, which, in his view, conflicted with each other regarding Ridosh's mental limitations. (Dkt. #11-1 at 16).

An ALJ should consider "all medical opinions received regarding the claimant." *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)). To the extent those medical opinions conflict with each other, "it is within the purview of the ALJ to evaluate . . . conflicting opinions and, based on the record as a whole, accord them the appropriate weight." *Williams v. Comm'r of Soc. Sec.*, 423 F. Supp. 2d 77, 82 (W.D.N.Y. 2006); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

When evaluating medical opinions, treating or otherwise, the ALJ should consider the following factors: (1) the frequency of examination and length, nature, and extent of the treatment relationship; (2) the evidence in support of the physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) whatever other factors tend to support or contradict the opinion. *See Gunter v. Comm'r of Soc. Sec.*, 361 Fed. Appx. 197, 199 (2d Cir. 2010) (summary order); *see also House v. Astrue*, 2013 WL 422058, *3 (N.D.N.Y. 2013) ("[m]edical opinions, regardless of the source are evaluated considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c)"). To be sure, the "Second Circuit does not . . . require a 'slavish recitation of each and every factor [of 20 C.F.R. §§ 404.1527(c),

416.927(c)] where the ALJ's reasoning and adherence to the regulation are clear.'" *Gonzalez v. Berryhill*, 2018 WL 3956495, *7 (D. Conn. 2018) (quoting *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013)). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).

When the ALJ rejects the opinion of a treating source, the regulations direct the ALJ to "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). At the same time, "the ALJ does not have to provide the same 'good reasons' evidence for not crediting a consulting doctor with sufficient weight." *Gonzalez*, 2018 WL 3956495 at *12.

The ALJ gave good reasons for discounting the weight afforded to the opinions of Dr. Nickell. Dr. Nickell opined on April 23, 2013, that based on Ridosh's learning disabilities and ADD, "it could be extrapolated . . . that he could have difficulty learning new skills or role[s] in certain job situations," and that she "would consider [Ridosh] disabled from that standpoint." (Tr. 414). On September 29, 2014, Dr. Nickell further opined that despite having "high average intelligence," Ridosh's learning disabilities caused him to lack "the ability to learn and apply knowledge and skills," which, Dr. Nickell believed, would "impact[] his ability now to be meaningfully employed due to diminished skills to learn and apply, and to truly succeed in a job." (Tr. 419).

In deciding to give these opinions "little weight," the ALJ detailed Ridosh's lengthy treating relationship with Dr. Nickell, spanning from 2010 to 2014, which primarily involved Ridosh's treatment for seizure disorder, ADHD, and other physical impairments that are not at

9

issue now.  (Tr. 25-27).  The ALJ determined that Dr. Nickell's opinions were inconsistent with her own treatment notes that "persistently describe[d] [Ridosh's] ADHD as responsive to his Ritalin," and "not supported by her benign contemporaneous treatments records."  (Tr. 26).  For example, in 2010, Dr. Nickell noted that Ridosh had ADD, but that Ritalin was "work[ing] well" for him.  (Tr. 336).  In a 2013 follow-up appointment with Dr. Nickell, Ridosh reported that he could not stay on task very well even on Ritalin, but Ridosh's father said the medication provided a "definite improvement."  (Tr. 413).  And in April 2014, Dr. Nickell indicated that Ridosh "responded pretty well to Ritalin," and that Ridosh and his family were "happy with the dose and its effect."  (Tr. 414).

The ALJ also reasoned that Dr. Nickell's April 2013 opinion was "phrased in highly speculative terms, and the psychological aspect of [Ridosh's] functioning [was] not within Dr. Nickell's purview as his primary care physician," (Tr. 26), both of which were appropriate reasons to discount Dr. Nickell's opinions.  *See, e.g.*, *Parker v. Comm'r of Soc. Sec.*, 2018 WL 1309741, *6 (W.D. Va. 2018) (ALJ justified in affording "little weight" to opinion of consultative physician where opinion was "phrased in a speculative manner"), *aff'd* 728 Fed. Appx. 215 (4th Cir. 2018); *Gonzalez*, 2018 WL 3956495 at *11 ("the ALJ considered that Dr. Jackson is plaintiff's 'primary care physician' and not a specialist . . . [t]hat too is an appropriate factor to consider under the Regulations") (citing 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5)).  Therefore, the ALJ gave good reasons for giving little weight to both of Dr. Nickell's opinions.

The ALJ also acted within his discretion in credited "some weight" to Dr. Lin's May 13, 2013, psychiatric evaluation of Ridosh.  As mentioned above, the ALJ explicitly incorporated those portions of the opinion support by the record evidence, such as Ridosh's social withdrawal, by limiting Ridosh to occasional interaction with his co-workers and the public.  (Tr. 28).

10

Contrary to Ridosh's argument, the ALJ also properly discredited that portion of Dr. Lin's medical source statement opining that Ridosh was "markedly limited in appropriately dealing with stress." (Tr. 360). Even though the ALJ noted that the basis for Dr. Lin's stress limitation was "unclear," he indicated that Ridosh's "longitudinal record, [his] lack of psychiatric treatment despite medical insurance, and [his] long history with a practitioner who prescribed medications for ADHD, but to whom [he] never complained of depressive or anxiety related symptoms, undermine[d] Dr. Lin's overall findings that [Ridosh's] mental limitations [were that] severe." (Tr. 27).

Initially, "[t]here is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations." *Pellam v. Astrue*, 508 Fed. Appx. 87, 89 (2d Cir. 2013). In any event, though, and contrary to Ridosh's objections, the ALJ's consideration of his mental health treatment history—or, more accurately, lack thereof—was appropriate. Here, Dr. Lin indicated that Ridosh had no prior psychiatric hospitalizations and that he denied outpatient and current treatment for psychiatric issues. (Tr. 358). It is also apparent from a review of the record that Ridosh did not seek treatment for any of his mental health issues. Indeed, he indicated at the hearing before the ALJ that he "refuse[d] to take medications" for his depression because he did "not want to take any more [medication] than absolutely needed," and that he only "now and then" talked to Dr. Nickell about his depression and did not seek out a specialist. (Tr. 48-49).

"Where, as here, a claimant has sought little-to-no treatment for an allegedly disabling condition, his inaction may appropriately be construed as evidence that the condition did not pose serious limitations." *Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018) (ALJ acted within his discretion in giving "little weight" to consultative examiner's stress-based limitations because it was "unsupported by the fact that the claimant ha[d] not sought out any

11

consistent treatment for his psychiatric condition") (collecting cases); *accord O'Connor v. Shalala*, 111 F.3d 123, 123 (2d Cir. 1997) (unpublished) ("In determining the existence of a disability, the Commissioner is also entitled to rely on the absence of contemporaneous evidence of the disability."). The ALJ's consideration of Ridosh's lack of treatment in weighing Dr. Lin's opinion was, accordingly, appropriate.

Finally, the Court disagrees with Ridosh that the ALJ erred in giving "great weight" to Dr. Blackwell's June 5, 2013, opinion. "It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Monroe v. Comm'r of Soc. Sec.*, 2016 WL 7971330, *7 (N.D.N.Y. 2016), *adopted sub nom. Monroe v. Colvin*, 2017 WL 318838 (N.D.N.Y. 2017). Furthermore, "a non-examining physician opinion may be entitled to more weight than the opinion of an examining physician . . . such as where the opinion of a treating or examining physician is contradicted by substantial evidence in the record." *Newell v. Colvin*, 2016 WL 4524809, *15 (W.D.N.Y. 2016), *reconsideration denied* 2017 WL 1541239 (W.D.N.Y. 2017); *see also O'Grady v. Astrue*, 2012 WL 3727220, *19 (D. Conn. 2012) ("[w]here the opinion of the treating physician is inconsistent with other substantial evidence in the record and, therefore, not entitled to controlling weight, an opinion of a non-examining doctor that is consistent with substantial evidence in the record may be afforded controlling weight").

As explained above, Dr. Nickell's opinions that Ridosh's learning disabilities and ADHD would cause him to be disabled is contradicted by her consistent treatment notes that Ridosh functioned well on Ritalin, and Dr. Lin's stress-based opinion likewise is not supported by record evidence. On the other hand, Dr. Blackwell noted Ridosh "was removed from special education before he completed high school and he was accepted to and attended some college," that the

medical records he reviewed "g[ave] no indication that [Ridosh] ha[d] ever sought treatment for depression, anxiety, or any other psychiatric symptoms," and that Ridosh's medication "appear[ed] to improve his attention as tested at the [consultative examination]." (Tr. 80). These opinions are supported by evidence in the record.

Nor does the Court agree with Ridosh that the ALJ should have discounted Dr. Blackwell's opinion because he did have at his disposal all of Ridosh's medical record. It is true that "a medical opinion that would otherwise constitute substantial evidence may be rendered stale or invalid because it is based upon an incomplete record or fails to account for a deterioration in a claimant's impairment[.]" *Miller v. Colvin*, 2016 WL 4478690, *12 (W.D.N.Y. 2016). However, here, "there is nothing in the record to support the conclusion that [Ridosh's] condition deteriorated after [Dr. Blackwell] issued his opinion, nor has [Ridosh] shown that any of the documents that were added to the record after [Dr. Blackwell] completed his review rendered the conclusions therein invalid." *Dennis v. Berryhill*, 2018 WL 488942, *6 (W.D.N.Y. 2018).

The Court further notes that Dr. Blackwell's opinion was not the only evidence relied upon by the ALJ in determining Ridosh's RFC. As noted above, the ALJ credited portions of Dr. Lin's opinion that were supported by the evidence. (Tr. 28).

In sum, after reviewing the ALJ's decision, the Court finds that the ALJ did not err in weighing the various medical opinions, to the extent they conflicted, and that the ALJ properly credited the opinion of Dr. Blackwell and the supported portions of Dr. Lin's opinion in formulating his RFC determination.

### 3.    **The ALJ's Reliance on Dr. Blackwell's Opinion**

Ridosh's final contention is that Dr. Blackwell's opinion that Ridosh did "not appear to have more than mild to moderate work-related limitations" was impermissibly vague as it "did not

provide useful insight into the extent of Mr. Ridosh's specific functional limitations in a work setting." (Dkt. #11-1 at 22).

As noted above, Dr. Blackwell assessed the degree to which Ridosh would be limited in performing various work-related activities, based on his review of the record before him. He opined that Ridosh was moderately restricted in activities of daily living, had mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and had no repeated episodes of decompensation. (Tr. 79). Dr. Blackwell then described some of Ridosh's school records, as well as detailed Dr. Lin's psychiatric evaluation.

Dr. Blackwell also opined that Ridosh was moderately limited in his ability to understand and remember detailed instructions, to carry out very short and simple instructions, to maintain attention and concentration for extended periods, to complete a normal workday or workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 82-83). Ultimately, Dr. Blackwell opined that Ridosh did "not appear to have more than mild to moderate work-related limitations," and that Ridosh should be limited to unskilled work because of his impairments. (Tr. 80, 84).

Contrary to Ridosh's argument, the use of "mild to moderate[]" in describing Ridosh's limitations does not render Dr. Blackwell's opinion impermissibly vague. *See, e.g.*, *Dennis*, 2018 WL 488942 at *6 (finding consultative examiner's use of the term "moderately limited" not impermissibly vague based on doctor's "narrative explanation of his RFC determination and ultimate[] conclu[sion] that [p]laintiff retained the ability to perform 'unskilled to semi-skilled work'"). The Court is persuaded that Dr. Blackwell's report, as a whole, provides context that did not render it "useless in evaluating [Ridosh's] residual functional capacity." *Burgess v. Astrue*,

537 F.3d 117, 129 (2d Cir. 2008) (quotations omitted). Therefore, the opinion in not unduly vague and the ALJ did not err in relying upon it.

## CONCLUSION

For the foregoing reasons, Ridosh's motion to vacate the ALJ's decision and remand the matter (Dkt. #11) is **DENIED**, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #13) is **GRANTED**. Ridosh's Complaint (Dkt. #1) is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      November 26, 2018.